Eric D. Holland
Ryan M. Furniss
HOLLAND, GROVES, SCHNELLER & STOLZE, LLC
10 South Riverside Plaza
Suite 1800
Chicago, IL 60606
T: 312-474-6407
eholland@allfela.com
rfurniss@allfela.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN G. CHRISTENSEN, III and CATHERINE KILPATRICK, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | CIVIL ACTION NO. _____ |
| Plaintiffs, | ) ) | **CLASS ACTION COMPLAINT** |
| vs. | ) ) | JURY TRIAL DEMANDED |
| VOLKSWAGEN GROUP OF AMERICA, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiffs, John G. Christensen, III ("Christensen") and Catherine Kilpatrick

("Kilpatrick") (collectively, "Plaintiffs"), by and through their attorneys, bring this action, on

behalf of themselves and all others similarly situated, against Defendant, Volkswagen Group of

America, Inc. ("VW" or "Defendant"), and, except for information based on their own personal

knowledge, allege on information and belief based on the investigation conducted by their

counsel as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action individually and on behalf of a proposed nationwide

class ("Class"), Illinois sub-class ("Illinois Sub-Class") and Vermont sub-class ("Vermont Sub-

Class") (collectively, "Class" or "Classes"), as more fully defined below, of similarly situated

consumers seeking to redress deceptive and otherwise improper advertising, sales and marketing

practices that Defendant continues to engage in regarding its Jetta SportWagen (models SE and

TDI) and Jetta Sedan (models SEL, TDI and Limited) vehicles ("Vehicle" or "Vehicles")

advertised, marketed and sold as containing *standard* hands-free Bluetooth® mobile telephone

connectivity calling system ("Bluetooth Connectivity").  As more fully alleged herein,

Defendant's schemes or artifices to defraud Plaintiffs and other members of the proposed Classes

have consisted of disseminating false and misleading information and omitting material

information in its sales brochures, on its Internet website, and through point of purchase

advertisements concerning the Bluetooth Connectivity in the Vehicles.  Specifically, VW

represents that the Vehicles are equipped with Bluetooth Connectivity and that the Bluetooth

Connectivity is a standard feature on the Vehicles.  This representation is false and misleading,

as the Vehicles are not capable of utilizing hands-free Bluetooth calling technology without

substantial and costly rewiring.

2.    Plaintiffs bring this action on behalf of themselves and other similarly situated consumers to halt the dissemination of these false and misleading advertising messages, correct the false and misleading perception Defendant has created in the minds of consumers, and to obtain redress for those who have purchased the Vehicles.  Plaintiffs allege violation of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301-2312 - Written Warranty), violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, violation of Vermont's Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*, breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment.

## JURISDICTION AND VENUE

3.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and Plaintiff and certain members of the Classes are citizens of states different from that of Defendant.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant: (a) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of the Vehicles here; (b) does substantial business in this district; (c) is subject to personal jurisdiction in this district; and (d) Christensen resides in this district.

## PARTIES

5.    Christensen, is, and at all times relevant to this action has been, a resident of Hawthorn Woods, Lake County, Illinois, and, thus, is a citizen of Illinois.  At the time of

purchase of one of the Vehicles, Christensen was exposed to and saw Defendant's claims concerning Bluetooth Connectivity. Christensen's decision to purchase the Vehicle was based, in part, on his belief that the Vehicle had Bluetooth Connectivity, as represented by VW. Christensen suffered injury in fact and was otherwise damaged as a result of the unlawful conduct described of herein because the Vehicle did not include Bluetooth Connectivity as Defendant claimed in its marketing, advertising and sales campaign.

6.      Kilpatrick is, and at all times relevant to this action has been, a resident of Salem, Washington County, New York, and, thus, is a citizen of New York. Prior to purchasing one of the Vehicles, Kilpatrick was exposed to and saw Defendant's claims concerning Bluetooth Connectivity. Kilpatrick's decision to purchase the Vehicle was based, in part, on her belief that the Vehicle had Bluetooth Connectivity, as represented by VW. Kilpatrick suffered injury in fact and was otherwise damaged as a result of the unlawful conduct described of herein because the Vehicle did not include Bluetooth Connectivity as Defendant claimed in its marketing, advertising and sales campaign.

7.      Defendant is an automobile manufacturing corporation organized under the laws of the State of New Jersey and conducts business in all 50 states in the United States, with its principal place of business in Herndon, Virginia. VW, thus, is a citizen of New Jersey and Virginia. VW designs, manufactures, distributes, markets, services, repairs, and sells passenger vehicles, including the Vehicles, nationwide, including in Illinois.

## SUBSTANTIVE ALLEGATIONS

8.      VW holds itself out as the third largest automaker in the world. Its operations include the Audi, Bentley, Bugatti, Lamborghini and Volkswagen brands, as well as Volkswagen

Group of America Chattanooga Operations and the related financial services company of VW

Credit, Inc. VW characterizes itself as striving "for the exceptional, and we are committed to our

continuing connection with American consumers, our communities and the environment. Our

ultimate goal: inspiring passion in one million new Volkswagen and Audi drivers each year in

the United States by 2018." *Volkswagen Group of America Corporate Brochure.*

9.      The Vehicles at issue are manufactured, marketed and sold by VW through its

established network of licensed dealers and distributors. The Vehicles come with a 3

year/36,000 mile New Vehicle Limited Warranty.

10.      Bluetooth Connectivity is advertised by VW as a standard feature in VW's Jetta

SportWagen SE and TDI models in the Jetta sales brochure and on its website.

http://www.vw.com/jettasportwagen/compare/en/us.

11.      With respect to the Jetta Sedan, VW advertises on its website that Bluetooth

Connectivity is a standard feature in its SEL, TDI and Limited models.

http://www.vw.com/jetta/highlights/en/us/#1interior_bluetooth.

12.      The sales brochure for the 2010 Jetta Sedan and Jetta SportWagen represented to

Plaintiffs and the Classes that the Vehicles have Bluetooth Connectivity as follows:

- "And while the navigation system is sure to get you where you're going, the available **Bluetooth® Hands-Free Calling with voice control** will make sure you're connected the whole way there."

- "Opt for a sunroof, the upgraded Touchscreen Navigation and Entertainment System, **Bluetooth connectivity**, or the MDI with iPod® cable for your Jetta."

- "**Bluetooth Connectivity**– Stay in touch while you stay in your Jetta. Connects you with your phone/PDA and your auto. Now that's a connection."

- Standard Features on the 2010 Jetta Sedan (2.5L SEL, 2.0L TDI and Limited models) and 2010 Jetta SportWagen (2.5L SE and 2.0L TDI)– **Bluetooth Hands-Free Calling system**.

- Specification Overview– **Bluetooth Hands-Free Calling system** (Sedan only); **Bluetooth Hands-Free Calling system** (SportWagen only).

(Emphasis added.)

13.     The Vehicles come equipped with an "Enhanced Bluetooth hands-free package" instructional booklet, which purports to allow a consumer to work the Bluetooth hands-free package in the Vehicles. Although Plaintiffs and members of the Classes have followed the directions and all steps in the material provided by VW, they still are unable to obtain the "standard" Bluetooth Connectivity.

14.     Upon information and belief, VW issued a technical service bulletin ("TSB"), Group 91, number 09-23, dated September 24, 2009, which addressed the defect with the Bluetooth Connectivity in the Vehicles. The TSB did not, however provide any notice to consumers regarding the defect, nor did it provide any remedy to consumers in connection with the defect. Subsequently, VW issued another TSB, Group 91, number 09-31, dated December 9, 2009, which, likewise, addressed the defect. Like its predecessors, this TSB similarly did not provide notice to consumers regarding the defect, nor did it prove any remedy to consumers in connection with the defect.

15.     Despite having issued the TSBs, VW has failed and refused to establish a procedure to remedy the defect with Bluetooth Connectivity in the Vehicles, and to reimburse consumers who have incurred costs for rewiring their Vehicles.

16.     Prior to marketing and selling the Vehicles to Plaintiffs and members of the Classes, Defendant knew or should have known that the Vehicles, as sold and leased, did not

contain the "standard" feature of Bluetooth Connectivity.

17.     Prior to marketing and selling the Vehicles to Plaintiffs and members of the Classes, Defendant knew or should have known that, in order to establish Bluetooth Connectivity, the Vehicles needed substantial rewiring (at a significant cost to consumers) and that this was a material fact that should have been disclosed to Plaintiffs and the members of the Classes.

18.     Prior to marketing and selling the Vehicles to Plaintiffs and members of the Classes, VW, as the manufacturer of the Vehicles, should have performed testing on the Vehicles to determine whether the Vehicles had Bluetooth Connectivity, which had prominently been displayed in VW's advertising as one of the standard features on the Vehicles.

19.     Notwithstanding its knowledge and the fact that the Vehicles do not have Bluetooth Connectivity, Defendant affirmatively misrepresented to Plaintiffs and the members of the Classes that the Vehicles were equipped with Bluetooth Connectivity when, in fact, they were not and only have such functionality after being rewired, at considerable cost to Plaintiffs and members of the Classes.

20.     VW has sold thousands of the Vehicles in Illinois and Vermont, and throughout the United States.  Upon information and belief, sales were bolstered by the federal government's offering of a $1,300.00 federal income tax credit nationally with the purchase of a 2010 Jetta SportWagen TDI Clean Diesel model.

21.     As a result of Defendant's conduct, Plaintiffs and members of the Classes have spent substantial sums of money to rewire their Vehicles for Bluetooth Connectivity or otherwise have not had the benefit of Bluetooth Connectivity because of the need to expend substantial

sums to rewire the Vehicles. By virtue of the purchase of their Vehicles and the monies spent to remedy the defect by Plaintiff and members of the Classes, VW has been the recipient of monies from Plaintiffs and members of the Classes.

22. Had Plaintiffs and other members of the Classes been aware that the Vehicles were not Bluetooth compatible, as sold or leased, they would not have purchased or leased the Vehicles, or would have paid less for the Vehicles.

**Plaintiff Christensen's Experiences With His VW**

23. Christensen is, and at all times relevant to this action has been, a resident of Hawthorn Woods, Illinois. On or about January 30, 2010, Christensen purchased a new 2010 Volkswagen Jetta Sedan SE for his personal use. The Jetta Sedan SE was advertised as equipped with Bluetooth Connectivity from The Autobarn VW, an authorized VW dealership located in Mt. Prospect, Illinois.

24. Christensen reviewed the manual for the Vehicle, and spoke to a VW salesperson, all of which claimed that the Vehicle had Bluetooth Connectivity. The window sticker on Christensen's Vehicle clearly stated, "Bluetooth® mobile telephone connectivity."

25. At the time of the purchase, Defendant failed to disclose that, although the Vehicle was advertised as having Bluetooth Connectivity, in actuality, the Vehicle is unable to operate Bluetooth functionality unless there is substantial work done to the Vehicle (including significant additional charges to the consumer) in order to retrofit the Vehicles so as to be able to operate Bluetooth technology. Further, Christensen was told by the VW dealership at the time of purchase that his Vehicle had Bluetooth Connectivity.

26. Christensen operated his Vehicle in a manner consistent with its intended use.

Christensen attempted to connect the Bluetooth technology in the Vehicle and followed the procedures detailed in the "Enhanced Bluetooth hands-free package" instructional manual that accompanied the Vehicle. Despite following the instructions in the VW Bluetooth manual, Christensen was unable to obtain Bluetooth Connectivity.

27.     Christensen contacted the VW dealership where he had purchased the Vehicle for problems, including an issue with a sticky speedometer and sun visor, however the VW dealership indicated that it could not fix those problems. Based on the non-responsiveness from VW for these two minor issues, Christensen began to look online for some assistance with Bluetooth Connectivity.

28.     From the online forums, Christensen learned that his Vehicle was likely equipped with the 9W2 module and that he really needed the 9W3 or 9W7 module for Bluetooth Connectivity. Indeed, one post that appeared to be from a VW sales representative indicated that the 9W7 was necessary for Bluetooth Connectivity. Other postings from consumers indicated success with establishing Bluetooth Connectivity once the 9W7 module was installed. Christensen contacted an authorized VW dealership in Huntersville, North Carolina and was able to order the 9W7. The North Carolina VW dealership was offering 27% off the 9W7 and a shipping charge of $16.00.

29.     Christensen paid $456.00, plus the shipping cost, for the 9W7 module. Christensen installed the 9W7 in his Vehicle and has been able to establish Bluetooth Connectivity.

**Plaintiff Kilpatrick's Experiences With Her VW**

30.     Kilpatrick is, and at all times relevant to this action has been, a resident of Salem,

New York. In or about May 2010, Kilpatrick purchased a new 2010 Volkswagen Jetta

SportWagen TDI for her personal use. The Jetta SportWagen TDI was advertised as equipped

with Bluetooth Connectivity from Kinny VW, an authorized VW dealership located in Rutland,

Vermont.

31.     Kilpatrick reviewed the manual for the Vehicle, and spoke to a VW salesperson,

all of which claimed that the Vehicle had Bluetooth Connectivity. The window sticker on

Kilpatrick's Vehicle clearly stated, "Bluetooth® mobile telephone connectivity." Further, there

was a phone button on the steering wheel of Kilpatrick's Vehicle, indicating to that the Vehicle

had Bluetooth Connectivity.

32.     At the time of the purchase, Defendant failed to disclose that, although the

Vehicle was advertised as having Bluetooth Connectivity, in actuality, the Vehicle is unable to

operate Bluetooth functionality unless there is substantial work done to the Vehicle (including

significant additional charges to the consumer) in order to retrofit the Vehicles so as to be able to

operate Bluetooth technology.

33.     Kilpatrick operated her Vehicle in a manner consistent with its intended use.

Kilpatrick attempted to connect the Bluetooth technology in the Vehicle. When Kilpatrick

received delivery of the Vehicle at the VW dealership, she was unable to establish Bluetooth

Connectivity in her Vehicle. Kilpatrick asked the VW salesperson for help in establishing

Bluetooth Connectivity in her Vehicle. The VW salesperson could not establish Bluetooth

Connectivity in Kilpatrick's Vehicle.

34.     Kilpatrick and her husband then went to lunch while another VW representative

looked at her Vehicle and attempted to establish Bluetooth Connectivity in her Vehicle. Upon

returning from lunch, the representative from the VW dealership indicated that Bluetooth

Connectivity could not be established in her Vehicle. The VW representative provided no

solution to the lack of Bluetooth Connectivity in her Vehicle. The VW representative indicated

that the 2011 Jetta SportWagen model would be capable of establishing Bluetooth Connectivity.

## CLASS ACTION ALLEGATIONS

35.     Plaintiffs bring this lawsuit, both individually and as a class action, on behalf of

similarly situated purchasers of the Vehicles, pursuant to Federal Rule of Civil Procedure

23(b)(2) and (3).

36.     The Classes that Plaintiffs seek to represent are defined as follows:

**Class:**
All persons who purchased or leased, not for resale, a Vehicle in the United
States.

37.     Plaintiffs also brings this action on behalf of the following Sub-Classes:

**Illinois Sub-Class:**
All persons who purchased or leased, not for resale, a Vehicle in the State of
Illinois.

**Vermont Sub-Class:**
All persons who purchased or leased, not for resale, a Vehicle in the State of
Vermont.

Excluded from the Classes are Defendant, as well as Defendant's affiliates, employees, officers

and directors, including franchised dealers; any person who has experienced physical injury as a

result of the defect at issue in this litigation; and the Judge(s) to whom this case is assigned.

Plaintiffs reserve the right to amend the definition of the Classes if discovery and/or further

investigation reveals that the Classes should be expanded or otherwise modified.

38.     **Numerosity/Impracticability of Joinder:** The members of the Classes are so

numerous that joinder of all members is impracticable. Plaintiffs reasonably estimate that there are thousands of Class members who purchased the Vehicles and at least hundreds, if not thousands, of members of the Illinois and Vermont Sub-Classes. The members of the Classes are readily identifiable from information and records in Defendant's possession, custody or control. The disposition of these claims will provide substantial benefits to the members of the Classes.

39. **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact which predominate over any question affecting only individual members of the Classes. These common legal and factual questions, which do not vary from members of the Classes, and which may be determined without reference to the individual circumstances of any members of the Classes, include, but are not limited, to the following:

(a) whether Defendant made misrepresentations to Plaintiffs and members of the Classes regarding the Bluetooth Connectivity on the Vehicles;

(b) whether Defendant's claims regarding Bluetooth Connectivity on the Vehicles were and are deceptive or misleading;

(c) whether Defendant concealed facts from Plaintiffs and members of the Classes about the Bluetooth Connectivity on the Vehicles;

(d) whether Defendant engaged in false or misleading advertising;

(e) whether Defendant knew or should have known that the representations were false;

(f) whether Defendant's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

(g) whether Defendant's conduct violated the Vermont Consumer Fraud Act;

-12-

(h)      whether Defendant's conduct constituted a breach of express warranty;

(i)      whether Defendant represented that the Vehicles have characteristics, benefits, uses or quantities which they do not have;

(j)      whether Defendant's conduct as alleged herein violates public policy; and

(k)      whether Plaintiffs and members of the Classes are entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

40.     **Typicality and Adequacy:** Plaintiffs' claims are typical of the claims of the proposed Classes, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Classes. Plaintiffs do not have any interests antagonistic to those of the Classes. Plaintiffs have retained competent counsel experienced in the prosecution of this type of litigation. The questions of law and fact common to the members of the Classes, some of which are set out above, predominate over any questions affecting only individual members of the Classes.

41.     **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for members of the Classes to prosecute their claims individually. The litigation and trial of Plaintiffs' claims is manageable.

42.     Unless a class is certified, Defendant will improperly retain monies received as a result of its conduct from Plaintiffs and members of the Classes. Unless Defendant is required to change its advertising practices, Defendant will continue to commit the violations alleged herein, and the members of the Classes, and the general public, will continue to be misled.

43.     Defendant has acted and refused to act on grounds generally applicable to the

-13-

Classes, making appropriate final injunctive relief with respect to the Classes as a whole.

**COUNT I**
**Violations Of Magnuson-Moss Act**
**(15 U.S. C. §§ 2301-2312 – Written Warranty)**
**On Behalf Of Plaintiffs And The Class Against VW**

44.     Plaintiffs reallege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

45.     The Vehicles at issue are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

46.     Plaintiffs and all Class members are "consumers" within the meaning of 15 U.S.C. § 2301(3), and utilized the Vehicles for personal use and not for resale or commercial purposes.

47.     VW is and was a "warrantor" and "supplier" within the meaning of 15 U.S.C. §§ 2301(4) and (5).

48.     VW provided Plaintiffs and all Class members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

49.     VW's written warranties provided to Plaintiffs and all Class members were identical in all material respects.

50.     VW knew that the Vehicles at issue suffered from a serious defect and, nevertheless, continued to market and sell these products with this express warranty.

51.     VW was obligated under the terms of the written warranty to repair or replace the Bluetooth Connectivity to ensure it was functioning properly.

52.     VW has breached the written warranty, as set forth above, by supplying the

Vehicles at issue in a condition which does not meet the warranty obligations undertaken by VW, and by failing to replace the defective Vehicles and/or refund the amounts paid by Plaintiffs and the Class to enable Bluetooth Connectivity in the Vehicles.

53.     As set forth above, the warranty fails in its essential purpose and, accordingly, Plaintiffs and members of the Class can not and should not be limited to the remedies set forth in the written warranty and, instead, should be permitted to recover other appropriate relief, including all compensatory damages and injunctive relief.

54.     Defendant has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Defendant's knowledge of the defect in the Vehicles at issue, Defendant has failed and refused to honor the warranty, even though VW knows that the Vehicles are inherently defective.

55.     Defendant has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defect in the Vehicles at issue.

56.     Plaintiffs have given Defendant a reasonable opportunity to cure its failures with respect to its breaches of written warranty, and Defendant has failed to do so.  To the extent any member of the Class has not provided Defendant with a reasonable opportunity to cure, any such failure is excused as a result of Defendant's conduct described herein.

57.     All jurisdictional prerequisites have been satisfied.

58.     By Defendant's conduct as described herein, including Defendant's knowledge of the defective Vehicles and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written promises, warranties and representations.

59.     As a result of Defendant's breach of express warranties, Plaintiffs and the

-15-

members of the Class are entitled to revoke their acceptance of the Vehicles, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**COUNT II**
**Violation Of Illinois Consumer Fraud And Deceptive Business Practices Act,**
**(815 ILCS 505/1, *et seq.* ("CFDBPA"))**
**On Behalf Of Plaintiff Christensen And The**
**Illinois Sub-Class Against VW**

60.     Christensen incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

61.     At all relevant times, Christensen and all members of the Illinois Sub-Class were consumers within the meaning of CFDBPA.

62.     At all relevant times hereto, VW engaged in trade and/or commerce within the meaning of CFDBPA.

63.     Despite knowing that the Vehicles are manufactured and sold without Bluetooth Connectivity, when it markets and sells the Vehicles, VW uniformly represents to customers and the general public that the Vehicles are free from defects and will perform in the manner and for the purpose that they are intended.

64.     Under all circumstances, VW's representations and/or omissions regarding the Bluetooth Connectivity in the Vehicles were and are misleading and deceptive, and VW intentionally made these misleading and deceptive representations and/or omissions (while knowing they were deceptive and misleading) for the sole purpose of deceiving Christensen and other Illinois Sub-Class members.  Defendant intended that Christensen rely on VW's deceptive and misleading practice.

65.     VW's conduct was unfair and deceptive and constituted an improper

concealment, suppression or omission of material facts, in violation of the CFDPA's prohibition against unfair business practices.

66.     VW violated the CFDPA's prohibition against misrepresenting and omitting material information during commercial transactions, as well as the CFDPA's prohibition against unfair business practices.

67.     VW's misconduct, including the misrepresentations and/or concealment that the Vehicles are not capable of Bluetooth Connectivity without substantial and costly rewiring, as described in this Complaint, took place in the course of trade or commerce in Illinois, and arose out of transactions that occurred at one or more of its VW dealerships in Illinois. VW's marketing, sales and representations, as well as its concomitant omissions, were material.

68.     As a direct and proximate result of VW's violations of the CFDPA, Christensen and other Sub-Class members suffered damages, in the form of, *inter alia*, monies spent to rewire their Vehicles.

### COUNT III
**Violations Of Vermont's Consumer Fraud Act,
(9 Vt. Stat. Ann. § 2451, *et seq.* ("VCPA"))
On Behalf Of Plaintiff Kilpatrick And The
Vermont Sub-Class Against VW**

69.     Kilpatrick incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

70.     The VCPA prohibits "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 9 Vt. Stat. Ann. § 2453(a).

71.     At all relevant times, Kilpatrick and all members of the Vermont Sub-Class were consumers within the meaning of VCPA.

-17-

72. At all relevant times, the Vehicles were goods within the meaning of VCPA.

73. At all relevant times, VW was a seller of the Vehicles within the meaning of VCPA.

74. At all relevant times hereto, VW engaged in trade and/or commerce within the meaning of VCPA.

75. Despite knowing that the Vehicles are manufactured and sold without Bluetooth Connectivity, when it markets and sells the Vehicles, VW engaged in unfair methods of competition and unfair and deceptive acts and practices in commerce by providing false or misleading information to the general public (*i.e.*, that the Vehicles contain Bluetooth Connectivity). As such, VW's representations and/or omissions were likely to mislead a reasonable consumer.

76. Under all circumstances, VW's representations and/or omissions regarding the Bluetooth Connectivity in the Vehicles were misleading and deceptive to Kilpatrick and the Vermont Sub-Class, and VW intentionally made these misleading and deceptive representations and/or omissions (while knowing they were deceptive and misleading) for the sole purpose of deceiving Kilpatrick and other Vermont Sub-Class members.

77. Defendant intended that Kilpatrick rely on VW's deceptive and misleading practice. Indeed, Kilpatrick did rely on VW's deceptive and misleading representations that the Vehicle would have Bluetooth Connectivity.

78. Kilpatrick and the Vermont Sub-Class members' interpretation that the Vehicle would have Bluetooth Connectivity was reasonable given VW's representations of Bluetooth Connectivity in the Vehicles.

-18-

79.     VW's misrepresentations and/or omissions were material in that had Kilpatrick known the Vehicle was not capable of establishing Bluetooth Connectivity as marketed, advertised and sold, she would not have purchased the Vehicle, or would have paid substantially less.

80.     VW's misconduct, including the misrepresentations and/or concealment that the Vehicles are not capable of establishing Bluetooth Connectivity without substantial and costly rewiring, as described in this Complaint, took place in the course of trade or commerce in Vermont, and arose out of transactions that occurred at one or more of its VW dealerships in Vermont.

81.     As a direct and proximate result of VW's violations of the VCPA, Kilpatrick and other members of the Vermont Sub-Class suffered damages, in the form of, *inter alia*, monies spent to rewire their Vehicles.

**<u>COUNT IV</u>**
**Breach of Implied Warranty of Merchantability, (810 Ill. Comp. Stat. 5/2-314)**
**On Behalf Of Plaintiff Christensen And The**
**Illinois Sub-Class Against VW**

82.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

83.     Christensen and the members of the Illinois Sub-Class are "buyers" as that term is defined in 810 Ill. Comp. Stat. 5/2-103.

84.     VW is a "seller" as that term is defined in 810 Ill. Comp. Stat. 5/2-103.

85.     The Vehicles are "goods" as that term is defined in 810 Ill. Comp. Stat. 5/2-105.

86.     VW is a merchant in the sale of the Vehicles to Christensen and the members of

-19-

the Illinois Sub-Class pursuant to 810 Ill. Comp. Stat. 5/2-104. VW manufactures, markets and

sells the Vehicles. Thus, VW provided Christensen and the members of the Illinois Sub-Class

with an implied warranty that the Vehicles are merchantable and fit for the ordinary purposes for

which they were sold. The Vehicles are not fit for ordinary purposes for which such Vehicles are

used because the Vehicles are not capable of establishing Bluetooth Connectivity without

substantial and costly rewiring. As a result, the Vehicles do not meet with the expectations of

Christensen or any other reasonable Vehicle owners and lessees as to the manner in which the

Vehicles should perform when used for ordinary purposes, because the manner in which the

Vehicles perform is so deficient and below a minimum level of quality as to render them unfit

for their ordinary use and purpose. By marketing and selling the Vehicles with hands-free

Bluetooth Connectivity as described in this Complaint, as well as by failing to repair the

Vehicles, Defendant breached the implied warranty of merchantability.

87.     VW knew or had reason to know that Christensen and the Illinois Sub-Class

members purchased the Vehicles, in part, to utilize Bluetooth Connectivity.

88.     The Vehicles are not adequately labeled, and VW has misrepresented the true

nature of the Bluetooth Connectivity in its Vehicles.

89.     The Vehicles do not conform to the promises and affirmations uniformly issued

by VW in its sales and marketing materials and warranties.

90.     Christensen and the Illinois Sub-Class members have used the Vehicles for their

intended and ordinary purpose.

91.     Christensen and the Illinois Sub-Class members have performed each and every

duty required under the terms of the warranties, except as may have been excused or prevented

by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

92.     Members of the Illinois Sub-Class have provided timely notice to Defendant regarding the problems they experienced with the Vehicles and, notwithstanding such notice, Defendant has failed and refused to offer Christensen and the Illinois Sub-Class an effective remedy, or such notice has otherwise been excused by VW's conduct and operation of law.

93.     In addition, Defendant has received, on information and belief, numerous complaints and other notices from consumers advising it of the problems associated with the Bluetooth Connectivity in the Vehicles.

94.     By virtue of the conduct described herein, Defendant breached the implied warranty of merchantability.

95.     Christensen and the Illinois Sub-Class members have been damaged as a direct and proximate result of VW's breach of the implied warranty.

### COUNT V
**Breach of Express Warranty, (810 ILCS 5/2-313)**
**On Behalf Of Plaintiff Christensen And The**
**Illinois Sub-Class Against VW**

96.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

97.     VW's express warranties covered the Vehicles and, under the circumstances described herein, the Bluetooth Connectivity.

98.     The express warranty was provided to Christensen and members of the Illinois Sub-Class by VW and specifically extends to original purchasers and subsequent owners for the

period of warranty coverage.

99.    VW has breached its express warranties, as set forth above, including its extended warranties, by supplying the Vehicles in a condition in which they do not meet the warranty obligations undertaken by VW and by failing to repair or replace the defect and/or defective parts inherent in the Vehicles.

100.    VW is obligated under the terms of its express warranties to repair and/or replace the defective Vehicles sold to Christensen and the Illinois Sub-Class.

101.    VW has received timely notice of the breaches of warranty alleged herein, or its conduct has otherwise obviated the need for any such notice.

102.    In addition, VW has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Vehicles, including hundreds (if not thousands) from Illinois residents.  Despite this notice and VW's knowledge, VW refuses to honor its warranties, even though it knows of the inherent defect in the Vehicles, *i.e.* that the Vehicles are not capable of establishing Bluetooth Connectivity without substantial and costly rewiring.

103.    VW has failed to provide to Christensen or the Illinois Sub-Class, as a warranty replacement, a product that conforms to the qualities and characteristics that VW expressly warranted when it sold the Vehicles to Christensen and members of the Illinois Sub-Class.

**<u>COUNT VI</u>**
**Breach of Implied Warranty of Merchantability, (9 Vt. Stat. Ann. §2-314)**
**On Behalf Of Plaintiff Kilpatrick And The**
**Vermont Sub-Class Against VW**

104.    Plaintiffs incorporate by reference the allegations contained in all preceding

paragraphs of this Complaint as though set forth fully herein.

105. VW is a "seller" as that term is defined in 9 Vt. Stat. Ann. §2-314(1).

106. The Vehicles are "goods" as that term is defined in 9 Vt. Stat. Ann. §2-314(2).

107. VW is a merchant in the sale of the Vehicles to Kilpatrick and the members of the Vermont Sub-Class pursuant to 9 Vt. Stat. Ann. §2-314(1). VW manufactures, markets and sells the Vehicles. Thus, VW provided Kilpatrick and the members of the Vermont Sub-Class with an implied warranty that the Vehicles are merchantable and fit for the ordinary purposes for which they were sold. 9 Vt. Stat. Ann. §2-314(2)(c). The Vehicles are not merchantable and are not fit for the ordinary purposes for which such Vehicles are used because the Vehicles are not capable of establishing Bluetooth Connectivity without substantial and costly rewiring. As a result, the Vehicles do not meet with the expectations of Kilpatrick or any other reasonable Vehicle owners and lessees as to the manner in which the Vehicles should perform when used for ordinary purposes, because the manner in which the Vehicles perform is so deficient and below a minimum level of quality as to render them unfit for their ordinary use and purpose. By marketing and selling the Vehicles with hands-free Bluetooth Connectivity as described in this Complaint, as well as by failing to repair the Vehicles, Defendant breached the implied warranty of merchantability.

108. VW also provided an implied warranty that the Vehicles are merchantable and "conform to the promises or affirmations of fact made on the container or label if any." 9 Vt. Stat. Ann. §2-314(2)(f). The Vehicles are not merchantable, as they do not conform to the representations by VW that the Vehicles contain Bluetooth Connectivity. The Vehicles are not capable of utilizing hands-free Bluetooth technology without substantial and costly rewiring. By

marketing and selling the Vehicles with hands-free Bluetooth Connectivity as described in this Complaint, as well as by failing to repair the Vehicles, Defendant breached the implied warranty of merchantability.

109.   VW knew or had reason to know that Kilpatrick and the Vermont Sub-Class members purchased the Vehicles, in part, to utilize Bluetooth Connectivity.

110.   The Vehicles are not adequately labeled, and VW has misrepresented the true nature of the Bluetooth Connectivity in its Vehicles.

111.   The Vehicles do not conform to the promises and affirmations uniformly issued by VW in its sales and marketing materials and warranties.

112.   Kilpatrick and the Vermont Sub-Class members have used the Vehicles for their intended and ordinary purpose.

113.   Kilpatrick and the Vermont Sub-Class members have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

114.   Members of the Vermont Sub-Class have provided timely notice to Defendant regarding the problems they experienced with the Vehicles and, notwithstanding such notice, Defendant has failed and refused to offer Kilpatrick and the Vermont Sub-Class an effective remedy.

115.   In addition, Defendant has received, on information and belief, numerous complaints and other notices from consumers advising them of the problems associated with the Bluetooth Connectivity in the Vehicles.

116. By virtue of the conduct described herein, Defendant breached the implied warranty of merchantability.

117. Kilpatrick and the Vermont Sub-Class members have been damaged as a direct and proximate result of VW's breach of the implied warranty.

**COUNT VII**
**Breach of Express Warranty, (9 Vt. Stat. Ann. § 2-313)**
**On Behalf Of Plaintiff Kilpatrick And The**
**Vermont Sub-Class Against VW**

118. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

119. VW's express warranties covered the Vehicles and, under the circumstances described herein, the Bluetooth Connectivity.

120. The express warranty was provided to Kilpatrick and members of the Vermont Sub-Class by VW and specifically extends to original purchasers and subsequent owners for the period of warranty coverage.

121. VW has breached its express warranties, as set forth above, including its extended warranties, by supplying the Vehicles in a condition in which they do not meet the warranty obligations undertaken by VW and by failing to repair or replace the defect and/or defective parts inherent in the Vehicles.

122. VW is obligated under the terms of its express warranties to repair and/or replace the defective Vehicles sold to Kilpatrick and the Vermont Sub-Class.

123. VW has received timely notice of the breaches of warranty alleged herein.

124. In addition, VW has received, upon information and belief, thousands of

complaints and other notices from its customers nationwide advising it of the defects in the Vehicles, including hundreds (if not thousands) from Vermont residents. Despite this notice and VW's knowledge, VW refuses to honor its warranties, even though it knows of the inherent defect in the Vehicles, *i.e.* that the Vehicles are not capable of establishing Bluetooth Connectivity without substantial and costly rewiring.

125.    VW has failed to provide to Kilpatrick or the Vermont Sub-Class, as a warranty replacement, a product that conforms to the qualities and characteristics that VW expressly warranted when it sold the Vehicles to Kilpatrick and members of the Vermont Sub-Class.

**COUNT VIII**
**Unjust Enrichment**
**On Behalf Of Plaintiffs Christensen and Kilpatrick And The**
**Illinois And Vermont Sub-Classes Against VW**

126.    Plaintiffs reallege and incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth here, to the extent not inconsistent with the claims asserted in this Count.

127.    This claim is asserted in the alternative on behalf of Plaintiffs and the members of the Sub-Classes, to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

128.    As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

129.    Specifically, by its misconduct described herein, Defendant has accepted a benefit (monies paid by Plaintiffs and Class members).

130.    It would be inequitable for Defendant to retain the profits, benefits, compensation,

consideration and other monies obtained by and from their wrongful conduct in marketing and

selling the defective Vehicles at issue to Plaintiffs and the Sub-Classes, as well as engaging in

the other unfair and deceptive conduct detailed in this Complaint.

131.     Plaintiffs, on behalf of themselves and all others similarly situated, seek

restitution from Defendants and an Order of this Court proportionally disgorging all profits,

benefits, compensation, consideration and other monies obtained by Defendant from its wrongful

conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Classes,

pray for judgment as follows:

a.     Certification of the Classes under Federal Rule of Civil Procedure 23 and
appointment of Plaintiffs as representatives of the Classes and their counsel as
Class counsel;

b.     Compensatory and other damages for economic and non-economic damages
identified herein;

c.     Awarding restitution and disgorgement of Defendant's revenues or profits to
Plaintiffs and the members of the proposed Classes as permitted by applicable
law;

d.     An Order requiring Defendant to cease and desist from engaging in wrongful
conduct and to engage in a corrective advertising campaign;

e.     Statutory pre-judgment and post-judgment interest on any amounts;

f.     Payment of reasonable attorneys' fees and recoverable litigation expenses as may
be allowable under applicable law; and

g.     Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.


Dated: October 8, 2010                          Respectfully submitted,



                                                HOLLAND, GROVES, SCHNELLER
                                                  & STOLZE, LLC

                                          By:     /s/Eric D. Holland_____
                                                Eric D. Holland
                                                Ryan M. Furniss
                                                10 South Riverside Plaza
                                                Suite 1800
                                                Chicago, IL 60606
                                                Telephone: (312) 474-6407
                                                eholland@allfela.com
                                                rfurniss@allfela.com


                                                Scott Shepherd
                                                SHEPHERD, FINKELMAN, MILLER &
                                                SHAH, LLP
                                                35 East State Street
                                                Media, PA 19063
                                                Telephone: (610) 891-9880
                                                Facsimile: (610) 891-9883
                                                jshah@sfmslaw.com
                                                nfinkelman@sfmslaw.com


                                                *Attorneys for Plaintiffs and the Proposed
                                                Classes*