**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN G. CHRISTENSEN, III, CATHERINE KILPATRICK and LAWRENCE WU, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | CIVIL ACTION NO. 1:10-cv-06484 |
| Plaintiffs, | ) ) ) | **AMENDED CLASS ACTION COMPLAINT** |
| vs. | ) ) | |
| VOLKSWAGEN GROUP OF AMERICA, INC., | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) | |

Plaintiffs, John G. Christensen, III ("Christensen"), Catherine Kilpatrick ("Kilpatrick") and Lawrence Wu ("Wu") (collectively, "Plaintiffs"), by and through their attorneys, bring this action, on behalf of themselves and all others similarly situated, against Defendant, Volkswagen Group of America, Inc. ("VW" or "Defendant"), and, except for information based on their own personal knowledge, allege on information and belief based on the investigation conducted by their counsel as follows:

<u>**NATURE OF THE ACTION**</u>

1.     Plaintiffs bring this action individually and on behalf of a proposed nationwide class ("Class"), California sub-classes ("California Sub-Class" and "California Warranty Sub-

Class"), Illinois sub-class ("Illinois Sub-Class") and Vermont sub-class ("Vermont Sub-Class") (collectively, "Class" or Classes"), as more fully defined below, of similarly situated consumers seeking to redress deceptive and otherwise improper advertising, sales and marketing practices that Defendant continues to engage in regarding its Jetta SportWagen (models S, SE and TDI) and Jetta Sedan (models SE, SEL, TDI and Limited) vehicles ("Vehicle" or "Vehicles") advertised, marketed and sold as containing a *standard* hands-free Bluetooth® mobile telephone connectivity calling system ("Bluetooth System"). As more fully alleged herein, Defendant's schemes or artifices to defraud Plaintiffs and other members of the proposed Classes have consisted of disseminating false and misleading information and omitting material information in its sales brochures, on its Internet website, and through point of purchase advertisements concerning the Bluetooth System in the Vehicles. Specifically, VW represents that the Vehicles are equipped with the Bluetooth System and that the Bluetooth System is a *standard*, operational feature on the Vehicles. This representation is false and misleading, as the Vehicles are not capable of utilizing the Bluetooth System without substantial and costly rewiring.

2.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers to halt the dissemination of these false and misleading advertising messages, correct the false and misleading perception Defendant has created in the minds of consumers, and to obtain redress for those who have purchased the Vehicles. Plaintiffs allege violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301-2312 - Written Warranty); California Business & Professions Code Section 17200, *et seq.*; California Business & Professions Code Section 17500, *et seq.*; California Song-Beverly Consumer Warranty Act, Civil Code Section 1790, *et seq.*; California Consumers Legal Remedies Act ("CLRA"), Civil Code Section 1750,

*et seq.*; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*;

Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. § 2451, *et seq.*; breach of express warranty;

breach of implied warranty of merchantability; and unjust enrichment.

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The

matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000

and Plaintiffs and certain members of the Classes are citizens of states different from that of

Defendant.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant: (a)

is authorized to conduct business in this district and has intentionally availed itself of the laws

and markets within this district through the promotion, marketing, distribution and sale of the

Vehicles here; (b) does substantial business in this district; (c) is subject to personal jurisdiction

in this district; and (d) Christensen resides in this district.

## PARTIES

5.     Christensen is, and at all times relevant to this action has been, a resident of

Hawthorn Woods, Lake County, Illinois, and, thus, is a citizen of Illinois. At the time of

purchase of one of the Vehicles, Christensen was exposed to and saw Defendant's claims

concerning the Bluetooth System. Christensen's decision to purchase the Vehicle was based, in

part, on his belief that the Vehicle had an operating Bluetooth System, as represented by VW.

Christensen suffered injury in fact, sustained an ascertainable loss, and was otherwise damaged

as a result of the unlawful conduct described of herein because the Vehicle did not include an

operating Bluetooth System as Defendant claimed in its marketing, advertising and sales

campaign.

6.      Kilpatrick is, and at all times relevant to this action has been, a resident of Salem,

Washington County, New York, and, thus, is a citizen of New York.  Prior to purchasing one of

the Vehicles, Kilpatrick was exposed to and saw Defendant's claims concerning the Bluetooth

System.  Kilpatrick's decision to purchase the Vehicle was based, in part, on her belief that the

Vehicle had an operating Bluetooth System, as represented by VW.  Kilpatrick suffered injury in

fact, sustained an ascertainable loss, and was otherwise damaged as a result of the unlawful

conduct described of herein because the Vehicle did not include an operating Bluetooth System

as Defendant claimed in its marketing, advertising and sales campaign.

7.      Wu is, and at all times relevant to this action has been, a resident of Arcadia, Los

Angeles County, California, and, thus, is a citizen of California.  Prior to purchasing one of the

Vehicles, Wu was exposed to and saw Defendant's claims concerning the Bluetooth System.

Wu's decision to purchase the Vehicle was based, in part, on his belief that the Vehicle had an

operating Bluetooth System, as represented by VW.  Wu suffered injury in fact, sustained an

ascertainable loss, and was otherwise damaged as a result of the unlawful conduct described of

herein because the Vehicle did not include an operating Bluetooth System as Defendant claimed

in its marketing, advertising and sales campaign.  A true and correct copy of Wu's CLRA

Declaration is attached hereto as Exhibit 1.

8.      Defendant is an automobile manufacturing corporation organized under the laws

of the State of New Jersey and conducts business in all 50 states in the United States, with its

principal place of business in Herndon, Virginia.  VW, thus, is a citizen of New Jersey and

Virginia.  VW designs, manufactures, distributes, markets, services, repairs, and sells passenger

vehicles, including the Vehicles, nationwide, including in Illinois.

## SUBSTANTIVE ALLEGATIONS

9.      VW holds itself out as the third largest automaker in the world.  Its operations

include the Audi, Bentley, Bugatti, Lamborghini and Volkswagen brands, as well as Volkswagen

Group of America Chattanooga Operations and the related financial services company of VW

Credit, Inc.  VW characterizes itself as striving "for the exceptional, and we are committed to our

continuing connection with American consumers, our communities and the environment.  Our

ultimate goal: inspiring passion in one million new Volkswagen and Audi drivers each year in

the United States by 2018." *Volkswagen Group of America Corporate Brochure.*

10.     The Vehicles at issue are manufactured, marketed and sold by VW through its

established network of licensed dealers and distributors.  The Vehicles come with an identical 3

year/36,000 mile New Vehicle Limited Warranty ("Limited Warranty"), which covered the

Vehicles and, under the circumstances described herein, the Bluetooth System. The Limited

Warranty covers "any repair to correct a manufacturer's defect in material or workmanship

except wheel alignment, tire balance and the repair or replacement of tires."  The Limited

Warranty also provides that "mechanical adjustments not associated with a defect in material and

workmanship" are covered for one year. Thus, VW made affirmative statements warranting

against "any" material and workmanship defects, which necessarily includes the defect that

precludes operation of the Bluetooth System.

11.     An operating Bluetooth System is advertised by VW as a standard feature in

VW's Jetta SportWagen SE and TDI models in the Jetta sales brochure and on its website.

http://www.vw.com/jettasportwagen/compare/en/us.

12.    With respect to the Jetta Sedan, VW advertises on its website that an operating Bluetooth System is a standard feature in its SEL, TDI and Limited models. http://www.vw.com/jetta/highlights/en/us/#1interior_bluetooth.

13.    The sales brochure for the 2010 Jetta Sedan and Jetta SportWagen represented to Plaintiffs and the Classes that the Vehicles have a Bluetooth System as follows:

- "And while the navigation system is sure to get you where you're going, the available **Bluetooth® Hands-Free Calling with voice control** will make sure you're connected the whole way there."

- "Opt for a sunroof, the upgraded Touchscreen Navigation and Entertainment System, **Bluetooth connectivity**, or the MDI with iPod® cable for your Jetta."

- "**Bluetooth Connectivity**– Stay in touch while you stay in your Jetta. Connects you with your phone/PDA and your auto. Now that's a connection."

- Standard Features on the 2010 Jetta Sedan (2.5L SEL, 2.0L TDI and Limited models) and 2010 Jetta SportWagen (2.5L SE and 2.0L TDI)–**Bluetooth Hands-Free Calling system**.

- Specification Overview– **Bluetooth Hands-Free Calling system** (Sedan only); **Bluetooth Hands-Free Calling system** (SportWagen only).

(Emphasis added.)

14.    The Vehicles come equipped with an "Enhanced Bluetooth hands-free package" instructional booklet, which purports to allow a consumer to work the standard Bluetooth hands-free package in the Vehicles. Although Plaintiffs and members of the Classes have followed the directions and all steps in the material provided by VW, they still are unable to obtain an operating "standard" Bluetooth System, as the Bluetooth System cannot operate hands-free, which constitutes a defect in the Bluetooth System.

15.    In light of the requirement of many states and municipalities that operators of

motor vehicles use a headset or similar hands-free technology, WE's representations and its failure to provide a Bluetooth System that operates in a manner consistent with its representations was particularly material to Plaintiffs and members of the Class.

16.     In light of the fact that hands-free technology is widely accepted as a safer methodology of speaking on the telephone while operating a motor vehicle, VW's conduct gives rise to important safety concerns and issues.

17.     Upon information and belief, VW issued a technical service bulletin ("TSB"), Group 91, number 09-23, dated September 24, 2009, which addressed the defect with the Bluetooth System in the Vehicles. The TSB did not, however, provide any notice to consumers regarding the defect, nor did it provide any remedy to consumers in connection with the defect with the Bluetooth System.

18.     Subsequently, VW issued another TSB, Group 91, number 09-31, dated December 9, 2009, which, likewise, addressed the defect with the Bluetooth System.  Like its predecessors, this TSB similarly did not provide notice to consumers regarding the defect, nor did it prove any remedy to consumers in connection with the defect.

19.     Despite having issued the TSBs, VW has failed and refused to establish a procedure to remedy the defect with Bluetooth System in the Vehicles, and to reimburse consumers who have incurred costs for rewiring their Vehicles.

20.     Prior to marketing and selling the Vehicles to Plaintiffs and members of the Classes, Defendant knew or should have known that the Vehicles, as sold and leased, did not contain the "standard" feature of an operating Bluetooth System.

21.     Prior to marketing and selling the Vehicles to Plaintiffs and members of the

Classes, Defendant knew or should have known that, in order to establish an operating Bluetooth System, the Vehicles need substantial rewiring (at a significant cost to consumers) and that this was (and is) a material fact that should have been disclosed to Plaintiffs and the members of the Classes.

22.     Prior to marketing and selling the Vehicles to Plaintiffs and members of the Classes, VW, as the manufacturer of the Vehicles, should have performed testing on the Vehicles to determine whether the Vehicles had an operating Bluetooth System, which had prominently been displayed in VW's advertising as one of the standard features on the Vehicles.

23.     Notwithstanding its knowledge and the fact that the Vehicles do not have an operating Bluetooth System, Defendant affirmatively misrepresented to Plaintiffs and the members of the Classes that the standard Vehicles came equipped with an operating Bluetooth System when, in fact, they did not, and only have such functionality after being rewired, at considerable cost to Plaintiffs and members of the Classes.

24.     Despite notice and knowledge of the defects with the Bluetooth System from the numerous consumer complaints it has received, information received from dealers, and its own internal records, VW has not repaired the problems, offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers. Instead, Plaintiffs and Class members have been required to unilaterally take the initiative and have incurred costs related to remedying this problem on their own, have suffered damages to their Vehicles as a result, and/or have not been reimbursed for the excess monies they have paid out-of-pocket, all of which they otherwise would not have been forced to pay had they known about the defects with the Bluetooth System when they purchased the Vehicles.

25.     VW has sold thousands of the Vehicles in California, Illinois and Vermont, and throughout the United States.

26.     As a result of Defendant's conduct, Plaintiffs and members of the Classes have spent substantial sums of money to rewire their Vehicles to obtain an operational Bluetooth System or otherwise have not had the benefit of the Bluetooth System because of the need to expend substantial sums to rewire the Vehicles.  By virtue of the purchase of their Vehicles and the monies spent to attempt to remedy the defect by Plaintiffs and members of the Classes, VW has been the recipient of monies from Plaintiffs and members of the Classes.

27.     Had Plaintiffs and other members of the Classes been aware that the Vehicles were not equipped with an operating Bluetooth System, as sold or leased, they would not have purchased or leased the Vehicles, or would have paid less for the Vehicles.

**Plaintiff Christensen's Experiences With His VW**

28.     Christensen is, and at all times relevant to this action has been, a resident of Hawthorn Woods, Illinois.  On or about January 30, 2010, Christensen purchased a new 2010 Volkswagen Jetta Sedan SE for his personal use.  The Jetta Sedan SE was advertised as part of VW's extensive and pervasive mass-media advertising campaign as equipped with a Bluetooth System and was purchased by Christensen, and after numerous exposure to the advertising, from The Autobarn VW, an authorized VW dealership located in Mt. Prospect, Illinois.

29.     Christensen reviewed the manual for the Vehicle, and spoke to a VW salesperson, each of which confirmed that the Vehicle had Bluetooth System.

30.     The window sticker on Christensen's Vehicle clearly stated, "Bluetooth® mobile telephone connectivity" as a standard feature.

31.     At the time of the purchase, Defendant failed to disclose that, although the Vehicle was advertised and marketed as having a Bluetooth System, and although the Bluetooth System is described in the Vehicle manuals, in actuality, the Vehicle is unable to operate Bluetooth functionality unless there is substantial work done to the Vehicle (including significant additional charges to the consumer) in order to retrofit the Vehicle so as to be able to operate Bluetooth technology.

32.     Christensen operated his Vehicle in a manner consistent with its intended use. Christensen attempted to connect the Bluetooth System in the Vehicle and followed the procedures detailed in the "Enhanced Bluetooth hands-free package" instructional manual that accompanied the Vehicle. Despite following the instructions in the VW Bluetooth manual, Christensen was unable to operate the Bluetooth System.

33.     Christensen contacted the VW dealership where he had purchased the Vehicle for certain problems, including an issue with a sticky speedometer and sun visor; however, the VW dealership indicated that it could not fix those problems. Based on the non-responsiveness from VW for these two minor issues, Christensen began to look online for some assistance with the Bluetooth System.

34.     From the online forums, Christensen learned that his Vehicle was likely equipped with the 9W2 module and that he really needed the 9W3 or 9W7 module for the Bluetooth System. Indeed, one post that appeared to be from a VW representative indicated that the 9W7 was necessary for the Bluetooth System. Other postings from consumers indicated success with establishing the Bluetooth System once the 9W7 module was installed. Christensen contacted an authorized VW dealership in Huntersville, North Carolina and was able to order the 9W7

-10-

module. The North Carolina VW dealership was offering 27% off the price of the 9W7 module and a shipping charge of $16.00.

35.    Christensen paid $456.00, plus the shipping cost, for the 9W7 module. Christensen installed the 9W7 module in his Vehicle and, only after installing the new module, has been able to operate the Bluetooth System.

**Plaintiff Kilpatrick's Experiences With Her VW**

36.    Kilpatrick is, and at all times relevant to this action has been, a resident of Salem, New York. In or about May 2010, Kilpatrick purchased a new 2010 Volkswagen Jetta SportWagen TDI for her personal use. The Jetta Sedan SE was advertised as part of VW's extensive and pervasive mass-media advertising campaign as equipped with a Bluetooth System and was purchased by Kilpatrick, and after numerous exposure to the advertising, from Kinny VW, an authorized VW dealership located in Rutland, Vermont.

37.    Kilpatrick reviewed the manual for the Vehicle and spoke to a VW salesperson, each of which confirmed that the Vehicle had a Bluetooth System.

38.    The window sticker on Kilpatrick's Vehicle clearly stated, "Bluetooth® mobile telephone connectivity" as a standard feature. Further, there was a phone button on the steering wheel of Kilpatrick's Vehicle, indicating that the Vehicle had Bluetooth System.

39.    At the time of the purchase, Defendant failed to disclose that, although the Vehicle was advertised as having a Bluetooth System, and although the Bluetooth System is described in the Vehicle manuals, in actuality, the Vehicle is unable to operate Bluetooth functionality unless there is substantial work done to the Vehicle (including significant additional charges to the consumer) in order to retrofit the Vehicles so as to be able to operate Bluetooth

technology.

40.     Kilpatrick operated her Vehicle in a manner consistent with its intended use.
Kilpatrick attempted to connect the Bluetooth System in the Vehicle. When Kilpatrick received
delivery of the Vehicle at the VW dealership, she was unable to operate the Bluetooth System in
her Vehicle. Kilpatrick asked the VW salesperson for help in operating the Bluetooth System in
her Vehicle. The VW salesperson could not operate the Bluetooth System in Kilpatrick's
Vehicle.

41.     Kilpatrick and her husband then went to lunch while another VW representative
looked at her Vehicle and attempted to operate the Bluetooth System in her Vehicle. Upon
returning from lunch, the representative from the VW dealership indicated that the Bluetooth
System could not be operated in her Vehicle. The VW representative provided no solution to the
lack of an operating Bluetooth System in her Vehicle, but indicated that the 2011 Jetta
SportWagen model would be have an operational Bluetooth System.

**Plaintiff Wu's Experiences With His VW**

42.     Wu is, and at all times relevant to this action has been, a resident of Arcadia,
California. On or about April 17, 2010, Wu purchased a new 2010 Volkswagen Jetta
SportWagen TDI for his personal use. The Jetta Sedan SE was advertised as part of VW's
extensive and pervasive mass-media advertising campaign as equipped with a Bluetooth System
and was purchased by Wu, and after numerous exposure to the advertising, from Ontario
Volkswagen, an authorized VW dealership located in Ontario, California.

43.     Prior to purchase, Wu reviewed the manual for the Vehicle, VW's website and
talked to the VW salesperson, each of which confirmed that the Vehicle had a Bluetooth System.

44.     Wu also viewed the window sticker on the Vehicle, which indicated that "Bluetooth mobile telephone connectivity" was a standard feature on the Jetta SportWagen TDI. An operating Bluetooth System was material to Wu's decision to purchase the Vehicle.

45.     At the time of the purchase, Defendant failed to disclose that, although the Vehicle was advertised as having a Bluetooth System, and although the Bluetooth System is described in the Vehicle manuals, in actuality, the Vehicle is unable to operate Bluetooth functionality unless there is substantial work done to the Vehicle (including significant additional charges to the consumer) in order to retrofit the Vehicle so as to be able to operate Bluetooth technology.

46.     Wu operated his Vehicle in a manner consistent with its intended use. Because it is a violation of California law to talk on a cell phone while operating a vehicle, Wu immediately attempted to connect the Bluetooth System in the Vehicle. Wu followed the procedures detailed in the "Enhanced Bluetooth hands-free package" instructional manual that accompanied the Vehicle. Despite following the instructions in the VW Bluetooth manual, Wu was unable to operate the Bluetooth System.

47.     Wu returned to the VW dealership where he had purchased the Vehicle and notified the dealership that he was not able to utilize the Bluetooth System. The VW dealership was unable to operate the Bluetooth System in his Vehicle and referred Wu to Defendant.

48.     Following his discussions with the VW dealership, Wu contacted Volkswagen Group of America concerning the Bluetooth System in his Vehicle. In response to Wu's inquiry, the representative from Defendant said this was a common complaint and that there was no option that Wu could order so as to operate the Bluetooth System in his Vehicle as advertised.

-13-

49.     Volkswagen Group of America indicated that it would log Wu's complaint and get back to him. To date, Defendant has not contacted him.

50.     Following his conversation with the representative from Defendant, Wu again contacted his VW dealership concerning his inability to operate the Bluetooth System in his Vehicle. Wu told the VW dealership that he read online that some consumers had replaced the 9W2 module with the 9W7 module and, as a result, had success in operating the Bluetooth System. The VW dealership said that if Wu were to replace the 9W2 module with a 9W7 module, such action would void the factory warranty on his Vehicle.

51.     Because he could not violate California law regarding driving while on a cell phone, Wu purchased and installed the 9W7 module.

52.     Wu paid $350.00 for the 9W7 module. Wu installed the 9W7 in his Vehicle and, only after installing the new module, has been able to operate the Bluetooth System.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this lawsuit, both individually and as a class action, on behalf of similarly situated purchasers of the Vehicles, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).

54.     The Classes that Plaintiffs seek to represent are defined as follows:

**Class:**
All persons who purchased or leased, not for resale, a Vehicle in the United States.

55.     Plaintiffs also brings this action on behalf of the following Sub-Classes:

**Illinois Sub-Class:**
All persons who purchased or leased, not for resale, a Vehicle in the State of Illinois.

**Vermont Sub-Class:**
All persons who purchased or leased, not for resale, a Vehicle in the State of Vermont.

**California Sub-Class:**
All persons who purchased or leased, not for resale, a Vehicle in the State of California.

**California Warranty Sub-Class:**
All persons who purchased or leased one of the Vehicles for primarily personal, family or household purposes, as defined by California Civil Code §1791(a).

Excluded from the Classes are Defendant, as well as Defendant's affiliates, employees, officers and directors, including franchised dealers; any person who has experienced physical injury as a result of the defect at issue in this litigation; and the Judge(s) to whom this case is assigned. Plaintiffs reserve the right to amend the definition of the Classes if discovery and/or further investigation reveals that the Classes should be expanded or otherwise modified.

56.    **Numerosity/Impracticability of Joinder:** The members of the Classes are so numerous that joinder of all members is impracticable.  Plaintiffs reasonably estimate that there are thousands of Class members who purchased the Vehicles and at least hundreds, if not thousands, of members of the California, Illinois and Vermont Sub-Classes.  The members of the Classes are readily identifiable from information and records in Defendant's possession, custody or control.  The disposition of these claims will provide substantial benefits to the members of the Classes.

57.    **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact which predominate over any question affecting only individual members of the Classes.  These common legal and factual questions, which do

-15-

not vary from members of the Classes and which may be determined without reference to the individual circumstances of any members of the Classes, include, but are not limited, to the following:

(a)     whether Defendant made misrepresentations to Plaintiffs and members of the Classes regarding the Bluetooth System on the Vehicles;

(b)     whether Defendant's claims regarding the Bluetooth System on the Vehicles were and are deceptive or misleading;

(c)     whether Defendant concealed facts from Plaintiffs and members of the Classes about the Bluetooth System on the Vehicles;

(d)     whether Defendant engaged in false and/or misleading advertising;

(e)     whether Defendant knew or should have known that the representations were false;

(f)     whether Defendant's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

(g)     whether Defendant's conduct violated the Vermont Consumer Fraud Act;

(h)     whether Defendant's conduct constituted a breach of express warranty;

(i)     whether Defendant represented that the Vehicles have characteristics, benefits, uses or quantities which they do not have;

(j)     whether Defendant's conduct as alleged herein violates public policy;

(k)     whether Defendant's conduct violated California's consumer protection laws; and

(l)     whether Plaintiffs and members of the Classes are entitled to damages, restitution, equitable relief and/or other damages and relief, and, if so, the amount and nature of such relief.

58.     **Typicality and Adequacy:** Plaintiffs' claims are typical of the claims of the proposed Classes, and Plaintiffs will fairly and adequately represent and protect the interests of

the proposed Classes. Plaintiffs do not have any interests antagonistic to those of the Classes.

Plaintiffs have retained competent counsel experienced in the prosecution of this type of

litigation. The questions of law and fact common to the members of the Classes, some of which

are set out above, predominate over any questions affecting only individual members of the

Classes.

59. **Superiority:** A class action is superior to all other available methods for the fair

and efficient adjudication of this controversy. The expense and burden of individual litigation

would make it impracticable or impossible for members of the Classes to prosecute their claims

individually. The litigation and trial of Plaintiffs' claims is manageable.

60. Unless a class is certified, Defendant will improperly retain monies received, as a

result of its conduct, from Plaintiffs and members of the Classes. Unless Defendant is required

to change its advertising practices, Defendant will continue to commit the violations alleged

herein, and the members of the Classes, and the general public, will continue to be misled.

61. Defendant has acted and refused to act on grounds generally applicable to the

Classes, making appropriate final injunctive relief with respect to the Classes as a whole.

### COUNT I
### Violations Of Magnuson-Moss Act
### (15 U.S. C. §§ 2301-2312 – Written Warranty)
### On Behalf Of Plaintiffs And The Class Against VW

62. Plaintiffs reallege and incorporate by reference the allegations contained in the

foregoing paragraphs as if fully set forth herein.

63. The Vehicles at issue are "consumer products" within the meaning of 15 U.S.C. §

2301(1).

64.     Plaintiffs and all Class members are "consumers" within the meaning of 15 U.S.C. § 2301(3), and utilized the Vehicles for personal use and not for resale or commercial purposes.

65.     VW is and was a "warrantor" and "supplier" within the meaning of 15 U.S.C. §§ 2301(4) and (5).

66.     VW provided Plaintiffs and all Class members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

67.     VW's written warranties provided to Plaintiffs and all Class members were identical in all material respects.

68.     VW knew that the Vehicles at issue suffered from a serious defect and, nevertheless, continued to market and sell these products with this express warranty.

69.     VW was obligated under the terms of the written warranty to repair or replace the Bluetooth System to ensure it was functioning properly.

70.     VW has breached the written warranty, as set forth above, by supplying the Vehicles at issue in a condition which does not meet the warranty obligations undertaken by VW, and by failing to replace the defective Bluetooth Systems and/or refund the amounts paid by Plaintiffs and the Class to establish an operating Bluetooth System in the Vehicles.

71.     As set forth above, the warranty fails in its essential purpose and, accordingly, Plaintiffs and members of the Class cannot and should not be limited to the remedies set forth in the written warranty and, instead, should be permitted to recover other appropriate relief, including all compensatory damages and injunctive relief.

72.     Defendant has received sufficient and timely notice of the breaches of warranty

alleged herein. Despite this notice and Defendant's knowledge of the defect in the Vehicles at issue, Defendant has failed and refused to honor the warranty, even though VW knows that the Vehicles are inherently defective.

73.     Defendant has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defect in the Vehicles at issue.

74.     Plaintiffs have given Defendant a reasonable opportunity to cure its failures with respect to its breaches of written warranty, and Defendant has failed to do so. To the extent any member of the Class has not provided Defendant with a reasonable opportunity to cure, any such failure is excused as a result of Defendant's conduct described herein.

75.     Based on the conduct described herein, including but not limited to Defendant's failure to honor is warranties, it has been and is futile to engage in BBB Autoline mediation with Defendant.

76.     All jurisdictional prerequisites have been satisfied.

77.     By Defendant's conduct as described herein, including Defendant's knowledge of the defective Vehicles and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written promises, warranties and representations.

78.     As a result of Defendant's breach of express warranties, Plaintiffs and the members of the Class are entitled to revoke their acceptance of the Vehicles, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## COUNT II
### Violation Of Illinois Consumer Fraud And Deceptive Business Practices Act, (815 ILCS 505/1, *et seq.* ("CFDBPA")) On Behalf Of Plaintiff Christensen And The Illinois Sub-Class Against VW

79.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

80.     At all relevant times, Christensen and all members of the Illinois Sub-Class were consumers within the meaning of CFDBPA.

81.     At all relevant times hereto, VW engaged in trade and/or commerce within the meaning of CFDBPA.

82.     Despite knowing that the Vehicles are manufactured and sold without an operating Bluetooth System, when it markets and sells the Vehicles, VW uniformly represents to customers and the general public that the Vehicles are free from defects and will perform in the manner and for the purpose that they are intended.

83.     Under all circumstances, VW's representations and/or omissions regarding the Bluetooth System in the Vehicles were and are misleading and deceptive, and VW intentionally made these misleading and deceptive representations and/or omissions (while knowing they were deceptive and misleading) for the sole purpose of deceiving Christensen and other Illinois Sub-Class members.  Defendant intended that Christensen rely on VW's deceptive and misleading practice.

84.     VW's conduct was unfair and deceptive and constituted an improper concealment, suppression or omission of material facts, in violation of the CFDPA's prohibition against unfair business practices.

85.     VW violated the CFDPA's prohibition against misrepresenting and omitting material information during commercial transactions, as well as the CFDPA's prohibition against unfair business practices.

86.     VW's misconduct, including the misrepresentations and/or concealment that the Vehicles are not capable of operating the Bluetooth System without substantial and costly rewiring, as described in this Amended Complaint, took place in the course of trade or commerce in Illinois, and arose out of transactions that occurred at one or more of its VW dealerships in Illinois. VW's marketing, sales and representations, as well as its concomitant omissions, were and are material.

87.     As a direct and proximate result of VW's violations of the CFDPA, Christensen and other Illinois Sub-Class members suffered damages, in the form of, *inter alia*, monies spent to rewire their Vehicles.

**COUNT III**
**Violations Of Vermont's Consumer Fraud Act,**
**(9 Vt. Stat. Ann. § 2451, *et seq.* ("VCPA"))**
**On Behalf Of Plaintiff Kilpatrick And The**
**Vermont Sub-Class Against VW**

88.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

89.     The VCPA prohibits "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 9 Vt. Stat. Ann. § 2453(a).

90.     At all relevant times, Kilpatrick and all members of the Vermont Sub-Class were consumers within the meaning of VCPA.

91.     At all relevant times, the Vehicles were goods within the meaning of VCPA.

-21-

92.     At all relevant times, VW was a seller of the Vehicles within the meaning of VCPA.

93.     At all relevant times hereto, VW engaged in trade and/or commerce within the meaning of VCPA.

94.     Despite knowing that the Vehicles are manufactured and sold without an operating Bluetooth System, when it markets and sells the Vehicles, VW engaged in unfair methods of competition and unfair and deceptive acts and practices in commerce by providing false or misleading information to the general public (*i.e.*, that the Vehicles contain an operating Bluetooth System). As such, VW's representations and/or omissions were likely to mislead a reasonable consumer.

95.     Under all circumstances, VW's representations and/or omissions regarding the Bluetooth System in the Vehicles were misleading and deceptive to Kilpatrick and the Vermont Sub-Class, and VW intentionally made these misleading and deceptive representations and/or omissions (while knowing they were deceptive and misleading) for the sole purpose of deceiving Kilpatrick and other Vermont Sub-Class members.

96.     Defendant intended that Kilpatrick rely on its deceptive and misleading practice. Indeed, Kilpatrick did rely on VW's deceptive and misleading representations that the Vehicle would have an operating Bluetooth System.

97.     Kilpatrick and the Vermont Sub-Class members' interpretation that the Vehicle would have an operating Bluetooth System was reasonable given VW's representations about the Bluetooth System in the Vehicles.

98.     VW's misrepresentations and/or omissions were material in that, had Kilpatrick

-22-

known the Vehicle was not capable of operating the Bluetooth System as marketed, advertised and sold, she would not have purchased the Vehicle, or would have paid substantially less.

99. VW's misconduct, including the misrepresentations and/or concealment that the Vehicles are not capable of operating the Bluetooth System without substantial and costly rewiring, as described in this Amended Complaint, took place in the course of trade or commerce in Vermont, and arose out of transactions that occurred at one or more of its VW dealerships in Vermont.

100. As a direct and proximate result of VW's violations of the VCPA, Kilpatrick and other members of the Vermont Sub-Class suffered damages, in the form of, *inter alia*, monies spent to rewire their Vehicles.

## COUNT IV
### Violations Of Unfair Competition Law, (California Bus. & Prof. Code § 17200, *et seq.*) On Behalf Of Plaintiff Wu And The California Sub-Class Against VW

101. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

102. Wu brings this cause of action on behalf of himself and on behalf of the California Sub-Class.

103. Defendant has engaged in unfair, unlawful, and fraudulent business practices as set forth above.

104. By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of the UCL.

105. Defendant's acts and practices have deceived and/or are likely to deceive members of the consuming public by failing to disclose that the Vehicles are not capable of

utilizing the Bluetooth System without substantial and costly rewiring. Defendant had an affirmative duty to disclose this information.

106.    VW knowingly sold Plaintiff Wu and other consumers Vehicles that are not capable of operating the Bluetooth System without substantial and costly rewiring.

107.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

108.    VW's acts and practices are unlawful because they violate Civil Code §§ 1572, 1688, 1709, 1770(a)(2), 1770(a)(5), 1770(a)(7), 1770(a)(9), 1790 and California Commercial Code § 2313. Defendant's acts and practices are also unlawful because they violate Business and Professional Code § 17500, *et seq.* Specifically, Defendant marketed and sold the Vehicles as containing a standard Bluetooth System and deceptively and intentionally failed to disclose that the Vehicles are not capable of operating the Bluetooth System or hands-free Bluetooth technology without substantial and costly rewiring. VW's marketing, sales and representations, as well as its concomitant omissions, were material.

109.    Wu, on behalf of himself and on behalf of the California Sub-Class, seeks an order of this Court awarding, restitution, disgorgement, injunctive relief and all other relief allowed under Section 17200, *et seq.*, plus interest, attorneys' fees and costs pursuant to, *inter alia*, Cal. Code of Civ. Proc. § 1021.5.

## COUNT V
**Violations Of False and Misleading Advertising Law**
**(California Bus. & Prof. Code § 17500, *et seq.*)**
**On Behalf Of Plaintiff Wu And The California Sub-Class Against VW**

110. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs in the Complaint as if fully set forth herein.

111. Wu brings this cause of action on behalf of himself and on behalf of the California Sub-Class.

112. VW has engaged in advertising and marketing to the public and offered for sale the Vehicles throughout the United States, including California, and the world.

113. VW has engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the purchase of the Vehicles.

114. VW's advertisements and marketing representations regarding the characteristics of the Vehicles and, specifically regarding the Vehicles' Bluetooth System, were false, misleading, and deceptive as a result of VW's knowledge regarding the Vehicles.

115. The false and misleading representations were intended to, and likely to, deceive a reasonable consumer.

116. The false advertisements and misrepresentations were material to Wu and the California Sub-Class members in connection with their respective decisions to purchase the Vehicles.

117. Wu and the other California Sub-Class members relied on the false advertisements and misrepresentations, which played a substantial part in influencing the decision of Wu (and the members of the California Sub-Class) to purchase the Vehicles.

118.    At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Cal. Bus. & Prof. Code §17500, *et seq.*

119.    At all pertinent times, VW actively concealed its knowledge that the Vehicles do not work or otherwise function as advertised.

120.    Wu and the members of the California Sub-Class have suffered injury in fact and have lost money as a result of VW's false representations.

121.    Wu, on behalf of himself and on behalf of the California Sub-Class, seeks restitution, disgorgement, injunctive relief, and all other relief allowable under § 17500, *et seq.*

**COUNT VI**
**Violation Of California Civil Code § 1750, *et seq.***
**On Behalf Of Plaintiff Wu And The California Sub-Class Against VW**

122.    Plaintiffs incorporate by reference all allegations contained in all preceding paragraphs of the Complaint as if fully set forth herein.

123.    Wu brings this cause of action on behalf of himself and on behalf of the California Sub-Class.

124.    This claim arises under the Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.*

125.    At all times relevant hereto, Wu was a "consumer" as that term is defined in Civ. Code § 1761 (d).

126.    At all times relevant hereto, VW's Vehicles constituted "goods" as that term is defined in Civ. Code § 1761(a).

127.    At all times relevant hereto, Defendant constituted a "person" as that term is

-26-

defined in Civ. Code § 1761(c).

128.    At all times relevant hereto, Wu's purchase of the Vehicle constituted a "transaction" as that term is defined in Civ. Code § 1761(e).

129.    At all times relevant hereto, Defendant provided "services" to Wu and the California Sub-Class within the meaning of Civil Code § 1761(b).

130.    The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (2) Misrepresenting the source, sponsorship, approval or certification of goods; (5) Representing that goods . . . have . . . approval, characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods . . . are of a particular standard, quality or grade . . . if they are of another; and (9) Advertising goods . . . with intent not to sell them as advertised. Civil Code §§ 1770 (a)(2), (5), (7), and (9).

131.    VW fraudulently deceived Wu and the members of the California Sub-Class by representing that the Vehicles had certain characteristics, benefits, uses and qualities which they did not have (*i.e.*, Bluetooth System).  In doing so, VW intentionally misrepresented and concealed material facts from Wu and the California Sub-Class, specifically that the Vehicles include an operating Bluetooth System.  Said misrepresentation and concealment was done with the intention of deceiving Wu and the members of the California Sub-Class and depriving them of their legal rights and money and otherwise causing injury in fact.  The misrepresentations and omissions were and are material and Wu and members of the California Sub-Class would not have purchased the Vehicles had they known that the Vehicles did not include an operational

Bluetooth System, or would have paid substantially less for them.

132.    Wu and the members of the California Sub-Class have suffered injury in fact and have lost money as a result of VW's false representations.

133.    Wu is a consumer under Civil Code § 1761(d). Civil Code § 1780(a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.

134.    Wu also is entitled to recover actual or statutory compensatory/monetary damages as authorized by Civil Code § 1780(a)(1) and Civil Code § 1781(a)(1), restitution as applicable and authorized under Civil Code § 1780(a)(3) and punitive damages as authorized by Civil Code § 1780(a)(4), which are appropriate in this case in light of Defendant's knowing, intentional, malicious, fraudulent and unconscionable conduct, Defendant's reckless disregard of its legal obligations to Wu and the members of the California Sub-Class, and/or as otherwise recoverable under Civil Code § 1780(a)(4).

135.    Wu and the members of the California Sub-Class also are entitled to recover attorneys' fees and costs pursuant to Civil Code §§ 1780 and 1781.

136.    Under Civil Code § 1782(a), Wu provided the required thirty (30) day notice before filing the Complaint pursuant to Civil Code § 1782(d).

## COUNT VII
### Breach of Implied Warranty of Merchantability, (810 Ill. Comp. Stat. 5/2-314) On Behalf Of Plaintiff Christensen And The Illinois Sub-Class Against VW

137.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

138.    Christensen and the members of the Illinois Sub-Class are "buyers" as that term is

defined in 810 Ill. Comp. Stat. 5/2-103.

139.    VW is a "seller" as that term is defined in 810 Ill. Comp. Stat. 5/2-103.

140.    The Vehicles are "goods" as that term is defined in 810 Ill. Comp. Stat. 5/2-105.

141.    VW is a merchant in the sale of the Vehicles to Christensen and the members of the Illinois Sub-Class pursuant to 810 Ill. Comp. Stat. 5/2-104. VW manufactures, markets and sells the Vehicles. Thus, VW provided Christensen and the members of the Illinois Sub-Class with an implied warranty that the Vehicles are merchantable and fit for the ordinary purposes for which they were sold. The Vehicles are not fit for ordinary purposes for which such Vehicles are used because the Vehicles are not capable of operating the Bluetooth System without substantial and costly rewiring. As a result, the Vehicles do not meet with the expectations of Christensen or any other reasonable Vehicle owners and lessees as to the manner in which the Vehicles should perform when used for ordinary purposes, because the manner in which the Vehicles perform is so deficient and below a minimum level of quality as to render them unfit for their ordinary use and purpose. By marketing and selling the Vehicles with the hands-free Bluetooth System as described in this Amended Complaint, as well as by failing to repair the Vehicles, Defendant breached the implied warranty of merchantability.

142.    VW knew or had reason to know that Christensen and the Illinois Sub-Class members purchased the Vehicles, in part, to utilize the Bluetooth System.

143.    The Vehicles are not adequately labeled, and VW has misrepresented the true nature of the Bluetooth System in its Vehicles.

144.    The Vehicles do not conform to the promises and affirmations uniformly issued by VW in its sales and marketing materials and warranties.

145.    Christensen and the Illinois Sub-Class members have used the Vehicles for their intended and ordinary purpose.

146.    Christensen and the Illinois Sub-Class members have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

147.    Members of the Illinois Sub-Class have provided timely notice to Defendant regarding the problems they experienced with the Vehicles and, notwithstanding such notice, Defendant has failed and refused to offer Christensen and the Illinois Sub-Class an effective remedy, or such notice has otherwise been excused by VW's conduct and operation of law.

148.    In addition, Defendant has received, on information and belief, numerous complaints and other notices from consumers advising it of the problems associated with the Bluetooth System in the Vehicles.

149.    By virtue of the conduct described of herein, Defendant breached the implied warranty of merchantability.

150.    Christensen and the Illinois Sub-Class members have been damaged as a direct and proximate result of VW's breach of the implied warranty.

## COUNT VIII
### Violations Of The California Song-Beverly Act, (Civil Code §§ 1790, *et seq.*) On Behalf Of Plaintiff Wu And The California Warranty Sub-Class Against VW

151.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs in the Complaint as if fully set forth herein.

152.    Wu brings this cause of action on behalf of himself and on behalf of the

California Warranty Sub-Class.

153.    Wu's Vehicle and the Vehicles are, and, at all pertinent times were, new motor vehicles within the meaning of Civ. Code § 1793.22(e)(2).

154.    Wu's Vehicle and the Vehicles all suffered from a nonconformity within the meaning of Civ. Code § 1793.22(e)(1), since the condition of and problems with the Vehicles described herein resulted in the impairment of the use and value of the Vehicles to buyers and lessees of the Vehicles.

155.    As an express warrantor and manufacturer, VW had certain obligations under the Song–Beverly Act, and, in particular, Civil Code § 1793.2(b) and (d), to conform the Vehicles to the written warranty that accompanied them.

156.    Defendant and its agent dealers have refused to conform Wu's Vehicle and the Vehicles to the written warranty.  VW is, therefore, required to either pay damages or reimburse Wu and the California Warranty Sub-Class members the purchase or lease price and incidental damages pursuant to Civil Code §§ 1793.2(d) and 1794, in return for clear title to the Vehicles.

157.    At all pertinent times, VW also was a merchant in the sale of the Vehicles to Wu and the California Warranty Sub-Class members and, by operation of law (Civil Code § 1791.1), Defendant provided Wu and the California Warranty Sub-Class members an implied warranty of merchantability in the sale and lease of the Vehicles.

158.    The Vehicles are not fit for ordinary purposes for which such Vehicles are used because the Vehicles are not capable of operating the Bluetooth System and utilizing hands-free Bluetooth technology without substantial and costly rewiring.  As a result, the Vehicles do not meet with the expectations of Wu or any other reasonable Vehicle owners and lessees as to the

manner in which the Vehicles should perform when used for ordinary purposes, because the manner in which the Vehicles perform is so deficient and below a minimum level of quality so as to render them unfit for their ordinary use and purpose. Finally, by marketing and selling the Vehicles with hands-free Bluetooth System as described in this Amended Complaint, as well as by failing to repair the Vehicles, Defendant breached the implied warranty of merchantability.

159.    Wu and the California Warranty Sub-Class members have been damaged as a result of VW's breach of the implied warranty.

160.    Wu is entitled to the remedies provided by Civil Code § 1794.

## COUNT IX
### Breach of Implied Warranty of Merchantability, (9 Vt. Stat. Ann. §2-314)
### On Behalf Of Plaintiff Kilpatrick And The
### Vermont Sub-Class Against VW

161.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

162.    VW is a "seller" as that term is defined in 9 Vt. Stat. Ann. §2-314(1).

163.    The Vehicles are "goods" as that term is defined in 9 Vt. Stat. Ann. §2-314(2).

164.    VW is a merchant in the sale of the Vehicles to Kilpatrick and the members of the Vermont Sub-Class pursuant to 9 Vt. Stat. Ann. §2-314(1). VW manufactures, markets and sells the Vehicles. Thus, VW provided Kilpatrick and the members of the Vermont Sub-Class with an implied warranty that the Vehicles are merchantable and fit for the ordinary purposes for which they were sold. 9 Vt. Stat. Ann. §2-314(2)(c). The Vehicles are not merchantable and are not fit for the ordinary purposes for which such Vehicles are used because the Vehicles are not capable of operating the Bluetooth System without substantial and costly rewiring. As a result, the

Vehicles do not meet with the expectations of Kilpatrick or any other reasonable Vehicle owners and lessees as to the manner in which the Vehicles should perform when used for ordinary purposes, because the manner in which the Vehicles perform is so deficient and below a minimum level of quality as to render them unfit for their ordinary use and purpose. By marketing and selling the Vehicles without an operating hands-free Bluetooth System as described in this Amended Complaint, as well as by failing to repair the Vehicles, Defendant breached the implied warranty of merchantability.

165.    VW also provided an implied warranty that the Vehicles are merchantable and "conform to the promises or affirmations of fact made on the container or label if any." 9 Vt. Stat. Ann. §2-314(2)(f). The Vehicles are not merchantable, as they do not conform to the representations by VW that the Vehicles contain a Bluetooth System. The Vehicles are not capable of utilizing hands-free Bluetooth technology without substantial and costly rewiring. By knowingly marketing and selling the Vehicles with a defective Bluetooth System as described in this Amended Complaint, as well as by failing to repair the Vehicles, Defendant breached the implied warranty of merchantability.

166.    VW knew or had reason to know that Kilpatrick and the Vermont Sub-Class members purchased the Vehicles, in part, to utilize the Bluetooth System.

167.    The Vehicles are not adequately labeled, and VW has misrepresented the true nature of the Bluetooth System in its Vehicles.

168.    The Vehicles do not conform to the promises and affirmations uniformly issued by VW in its sales and marketing materials and warranties.

169.    Kilpatrick and the Vermont Sub-Class members have used the Vehicles for their

intended and ordinary purpose.

170.    Kilpatrick and the Vermont Sub-Class members have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

171.    Members of the Vermont Sub-Class have provided timely notice to Defendant regarding the problems they experienced with the Vehicles and, notwithstanding such notice, Defendant has failed and refused to offer Kilpatrick and the Vermont Sub-Class an effective remedy.

172.    In addition, Defendant has received, on information and belief, numerous complaints and other notices from consumers advising it of the problems associated with the Bluetooth System in the Vehicles.

173.    By virtue of the conduct described herein, Defendant breached the implied warranty of merchantability.

174.    Kilpatrick and the Vermont Sub-Class members have been damaged as a direct and proximate result of VW's breach of the implied warranty.

## COUNT X
### Breach of Express Warranty, (810 ILCS 5/2-313)
### On Behalf Of Plaintiff Christensen And The
### Illinois Sub-Class Against VW

175.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

176.    As set forth herein, Defendant's express warranties, which were identical in connection with the sale of all Vehicles, covered the Vehicles and, under the circumstances

described herein, the Bluetooth Systems. The Limited Warranty covers "any repair to correct a manufacturer's defect in material or workmanship except wheel alignment, tire balance and the repair or replacement of tires." The Limited Warranty also provides that "mechanical adjustments not associated with a defect in material and workmanship" are covered for one year. Thus, VW made affirmative statements warranting against "any" material and workmanship defects, which necessarily includes the defect that precludes operation of Bluetooth System.

177. The express warranty was provided to Christensen and members of the Illinois Sub-Class by VW and specifically extends to original purchasers and subsequent owners for the period of warranty coverage.

178. VW has breached its express warranties, as set forth above, including its extended warranties, by supplying the Vehicles in a condition in which they do not meet the warranty obligations undertaken by VW and by failing to repair or replace the defect and/or defective parts inherent in the Vehicles.

179. During the time period when the warranty was still in effect, the Vehicles were/are defective in material or workmanship. The defect with the Bluetooth Systems has resulted in damage to the Vehicles, including expensive repair costs that involve changing the module for the Bluetooth System, in excess of what is reasonably expected by consumers for regular maintenance of the Vehicles. This damage has resulted from a defect which was and is expressly covered under the terms of the express written vehicle warranty.

180. Defendant and its authorized agents for repairs during the Vehicles' warranty have failed to provide and pay for parts or service which would correct the defect in the Bluetooth System under warranty, as required by the Vehicles' express warranty.

181.    Defendant has wrongfully refused to cover the costs of repairs that have resulted from the defect in the Bluetooth System. This refusal is a breach of the express warranty. This refusal has resulted in Christensen and members of the Illinois Sub-Class suffering damage. Furthermore, Defendant continues to refuse to pay for the repairs which are necessary as a result of the defect in the Bluetooth System, wrongfully telling Class members that the problem is not a result of a defect or defects in the Vehicles, but is acceptable, and that the Bluetooth System will work on 2011 model vehicles.

182.    Defendant's failure to repair or replace the Bluetooth System contained in the Vehicles under the terms of the express warranty has caused the warranty to fail in its essential purpose, as a result of which Christensen and the Illinois Sub-Class are entitled to damages flowing from the breach of express warranty.

183.    The warranty Defendant provided to Christensen and Illinois Sub-Class members with the sale or lease of the Vehicles became part of the basis of the bargain and, therefore, constitutes an express warranty. In reliance upon said warranties, Christensen and the Illinois Sub-Class members purchased the Vehicles.

184.    At the time it made such express warranties, VW knew the purpose for which the Vehicles were intended to be used and warranted the Vehicles as effective and proper for such purpose.

185.    VW knew and had reason to know that the Vehicles did not conform to these express representations because the Vehicles are not able to be used as Defendant has represented.

186.    The Vehicles purchased by the members of the Illinois Sub-Class are defective in

factory materials and/or workmanship, and VW and/or its agents have failed to repair or replace without charge, the parts found to be defective in factory materials and/or workmanship in the Vehicles, both at the time of purchase or lease and thereafter.

187.    The defect in the Bluetooth System can and should be corrected by implementing available repairs.

188.    The Vehicles did not conform to Defendant's promises, descriptions or affirmations of fact, and were not fit for the ordinary purpose for which they were sold and used. Nevertheless, Defendant continued to market Vehicles by means of omitting material information and/or providing false and/or misleading information without regard to the actual, unsafe nature and significant restrictions on use.

189.    By the conduct described of herein, Defendant has failed and refused to conform the Vehicles to the express warranties and its conduct has voided any attempt on its part to disclaim liability for its actions.

190.    Christensen has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's conduct.

191.    VW has received timely notice of the breaches of warranty alleged herein, or its conduct has otherwise obviated the need for any such notice.

192.    In addition, VW has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Vehicles, including hundreds (if not thousands) from Illinois residents. Despite this notice and VW's knowledge, VW refuses to honor its warranties, even though it knows of the inherent

defect in the Vehicles, *i.e.*, that the Vehicles are not capable of operating the Bluetooth System without substantial and costly rewiring.

193.    VW has failed to provide to Christensen or the Illinois Sub-Class, as a warranty replacement, a product that conforms to the qualities and characteristics that VW expressly warranted when it sold the Vehicles to Christensen and members of the Illinois Sub-Class.

194.    As a result of VW's breach of express warranties, Christensen and other members of the Illinois Sub-Class have suffered damages.

**COUNT XI**
**Breach of Express Warranty, (9 Vt. Stat. Ann. § 2-313)**
**On Behalf Of Plaintiff Kilpatrick And The**
**Vermont Sub-Class Against VW**

195.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

196.    As set forth herein, Defendant's express warranties, which were identical in connection with the sale of all Vehicles, covered the Vehicles and, under the circumstances described herein, the Bluetooth Systems. The Limited Warranty covers "any repair to correct a manufacturer's defect in material or workmanship except wheel alignment, tire balance and the repair or replacement of tires." The Limited Warranty also provides that "mechanical adjustments not associated with a defect in material and workmanship" are covered for one year. Thus, VW made affirmative statements warranting against "any" material and workmanship defects, which necessarily includes the defect that precludes operation of the Bluetooth System.

197.    The express warranty was provided to Kilpatrick and members of the Vermont Sub-Class by VW and specifically extends to original purchasers and subsequent owners for the

period of warranty coverage.

198.    VW has breached its express warranties, as set forth above, including its extended warranties, by supplying the Vehicles in a condition which does not meet the warranty obligations undertaken by VW and by failing to repair or replace the defect and/or defective parts inherent in the Vehicles.

199.    During the time period when the warranty was still in effect, the Vehicles were/are defective in material or workmanship. The defect with the Bluetooth Systems has resulted in damage to the Vehicles, including expensive repair costs that involve changing the module for the Bluetooth System, in excess of what is reasonably expected by consumers for regular maintenance of the Vehicles. This damage has resulted from a defect which was and is expressly covered under the terms of the express written vehicle warranty.

200.    Defendant and its authorized agents for repairs during the Vehicles' warranty have failed to provide and pay for parts or service which would correct the defect in the Bluetooth System under warranty, as required by the Vehicles' express warranty.

201.    Defendant has wrongfully refused to cover the costs of repairs that have resulted from the defect in the Bluetooth System. This refusal is a breach of the express warranty. This refusal has resulted in Kilpatrick and members of the Vermont Sub-Class suffering damages. Furthermore, Defendant continues to refuse to pay for the repairs which are necessary as a result of the defect in the Bluetooth System, wrongfully telling Class members that the problem is not a result of a defect or defects in the Vehicles, but is acceptable, and that the Bluetooth System will work on 2011 model vehicles.

202.    Defendant's failure to repair or replace the Bluetooth System contained in the

-39-

Vehicles under the terms of the express warranty has caused the warranty to fail in its essential purpose, as a result of which Kilpatrick and the Vermont Sub-Class are entitled to damages flowing from the breach of express warranty.

203.    The warranty Defendant provided to Kilpatrick and the Vermont Sub-Class members with the sale or lease of the Vehicles became part of the basis of the bargain and, therefore, constitutes an express warranty.  In reliance upon said warranties, Kilpatrick and the Vermont Sub-Class members purchased said products.

204.    At the time it made such express warranties, VW knew the purpose for which the Vehicles were intended to be used and warranted Vehicles as effective and proper for such purpose.

205.    VW knew and had reason to know that the Vehicles did not conform to these express representations because the Vehicles are not able to be used as Defendant represented.

206.    The Vehicles purchased by the members of the Vermont Sub-Class are defective in factory materials and/or workmanship, and VW and/or its agents failed to repair or replace, without charge, the parts found to be defective in factory materials and/or workmanship in the Vehicles, both at the time of purchase or lease and thereafter.

207.    The defect in the Bluetooth System can and should be corrected by implementing available repairs.

208.    The Vehicles did not conform to Defendant's promises, descriptions or affirmations of fact, and were not fit for the ordinary purpose for which they were sold and used. Nevertheless, Defendant continued to market Vehicles by means of omitting material information or providing false and/or misleading information without regard to their actual,

-40-

unsafe nature and significant restrictions on use.

209.    By the conduct described of herein, Defendant has failed and refused to conform the Vehicles to the express warranties and its conduct has voided any attempt on its part to disclaim liability for its actions.

210.    Kilpatrick has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's conduct.

211.    VW has received timely notice of the breaches of warranty alleged herein.

212.    In addition, VW has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Vehicles, including hundreds (if not thousands) from Vermont residents.  Despite this notice and VW's knowledge, VW refuses to honor its warranties, even though it knows of the inherent defect in the Vehicles, *i.e.*, that the Vehicles are not capable of operating the Bluetooth System without substantial and costly rewiring.

213.    VW has failed to provide to Kilpatrick or the Vermont Sub-Class, as a warranty replacement, a product that conforms to the qualities and characteristics that VW expressly warranted when it sold the Vehicles to Kilpatrick and members of the Vermont Sub-Class. As a result of VW's breach of express warranties, Kilpatrick and the other members of the Vermont Sub-Class have suffered damages.

## COUNT XII
### Breach Of Express Warranty
### On Behalf Of Plaintiff Wu And California Sub-Class Against VW

214.    Plaintiffs incorporate by reference all of the allegations contained in the preceding

-41-

paragraphs in the Complaint as if fully set forth herein.

215.    Wu brings this cause of action on behalf of himself and on behalf of the California Sub-Class.

216.    As set forth herein, Defendant's express warranties, which were identical in connection with the sale of all Vehicles, covered the Vehicles and, under the circumstances described herein, the Bluetooth Systems. The Limited Warranty covers "any repair to correct a manufacturer's defect in material or workmanship except wheel alignment, tire balance and the repair or replacement of tires." The Limited Warranty also provides that "mechanical adjustments not associated with a defect in material and workmanship" are covered for one year. Thus, VW made affirmative statements warranting against "any" material and workmanship defects, which necessarily includes the defect that precludes operation of the Bluetooth System.

217.    The express warranty was provided to Wu and members of the California Sub-Class by VW and specifically extends to original purchasers and subsequent owners for the period of warranty coverage.

218.    During the time period when the warranty was still in effect, the Vehicles were/are defective in material or workmanship. The defect with the Bluetooth Systems has resulted in damage to the Vehicles, including expensive repair costs that involve changing the module for the Bluetooth System, in excess of what is reasonably expected by consumers for regular maintenance of the Vehicles. This damage has resulted from a defect which was and is expressly covered under the terms of the express written vehicle warranty.

219.    Defendant and its authorized agents for repairs during the Vehicles' warranty have failed to provide and pay for parts or service which would correct the defect in the

Bluetooth System under warranty, as required by the Vehicles' express warranty.

220.    Defendant has wrongfully refused to cover the costs of repairs that have resulted from the defect in the Bluetooth System. This refusal is a breach of the express warranty. This refusal has resulted in Wu and members of the California Sub-Class suffering damage. Furthermore, Defendant continues to refuse to pay for the repairs which are necessary as a result of the defect in the Bluetooth System, wrongfully telling Class members that the problem is not a result of a defect or defects in the Vehicles, but is acceptable, and that the Bluetooth System will work on 2011 model vehicles.

221.    Defendant's failure to repair or replace the Bluetooth System contained in the Vehicles under the terms of the express warranty has caused the warranty to fail in its essential purpose, as a result of which Wu and the California Sub-Class are entitled to damages flowing from the breach of express warranty.

222.    The warranty Defendant provided to Wu and the California Sub-Class members with the sale or lease of the Vehicles became part of the basis of the bargain and, therefore, constitutes an express warranty. In reliance upon said warranties, Wu and the California Sub-Class members purchased said Vehicles.

223.    At the time it made such express warranties, VW knew the purpose for which the Vehicles were intended to be used and warranted the Vehicles as effective and proper for such purpose.

224.    VW knew and had reason to know that the Vehicles did not conform to these express representations because the Vehicles are not able to be used as Defendant represented.

225.    The Vehicles purchased by the members of the California Sub-Class are defective

in factory materials and/or workmanship, and VW and/or its agents failed to repair or replace, without charge, the parts found to be defective in factory materials and/or workmanship in the Vehicles, both at the time of purchase or lease and thereafter.

226. The defect in the Bluetooth System can and should be corrected by implementing available repairs.

227. The Class Vehicles did not conform to Defendant's promises, descriptions or affirmations of fact, and were not fit for the ordinary purpose for which they were sold and used. Nevertheless, Defendant continued to market Vehicles by means of omitting material information or providing false and/or misleading information without regard to the actual, unsafe nature and significant restrictions on use.

228. By the conduct described of herein, Defendant has failed and refused to conform the Vehicles to the express warranties and its conduct has voided any attempt on its part to disclaim liability for its actions.

229. Wu has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's conduct.

230. By the conduct described of herein, Defendant has failed and refused to conform the Vehicles to the express warranties and its conduct has voided any attempt on its part to disclaim liability for its actions.

231. Wu has performed each and every duty required of him under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

232.    In addition, Defendant has received, on information and belief, thousands of complaints and other notices from its consumers advising it of the defects associated with the Vehicles.

233.    As a result of VW's breach of express warranties, Wu and other members of the California Sub-Class have suffered damages.

## COUNT XIII
### Unjust Enrichment
### On Behalf Of Plaintiffs Christensen, Kilpatrick And Wu And The Illinois, Vermont and California Sub-Classes Against VW

234.    Plaintiffs incorporate by reference all of the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein, to the extent not inconsistent with the claims asserted in this Count.

235.    This claim is asserted in the alternative on behalf of Plaintiffs and the members of the Sub-Classes, to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

236.    As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

237.    Specifically, by its misconduct described herein, Defendant has accepted a benefit (monies paid by Plaintiffs and Class members).

238.    It would be inequitable for Defendant to retain the profits, benefits, compensation, consideration and other monies obtained by and from their wrongful conduct in marketing and selling the defective Vehicles at issue to Plaintiffs and the Sub-Classes, as well as engaging in the other unfair and deceptive conduct detailed in this Amended Complaint.

239.   Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution from Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration and other monies obtained by Defendant from its wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Classes, pray for judgment as follows:

a.   Certification of the Classes under Federal Rule of Civil Procedure 23 and appointment of Plaintiffs as representatives of the Classes and their counsel as Class counsel;

b.   Compensatory and other damages for economic and non-economic damages identified herein;

c.   Awarding restitution and disgorgement of Defendant's revenues or profits to Plaintiffs and the members of the proposed Classes as permitted by applicable law;

d.   An Order requiring Defendant to cease and desist from engaging in wrongful conduct and to engage in a corrective advertising campaign;

e.   Statutory pre-judgment and post-judgment interest on any amounts;

f.   Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

g.   Such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: January 31, 2011                          Respectfully submitted,

HOLLAND, GROVES, SCHNELLER
& STOLZE, LLC

By:/s/ Ryan Furniss
    Eric D. Holland
    Steven Stolze
    Ryan Furniss
    10 South Riverside Plaza
    Suite 1800
    Chicago, IL 60606
    Telephone: (312) 474-6407
    eholland@allfela.com
    gschneller@allfela.com
    rfurniss@allfela.com

    James E. Miller
    Patrick A. Klingman
    Karen M. Leser-Grenon
    SHEPHERD, FINKELMAN, MILLER &
    SHAH, LLP
    65 Main Street
    Chester, CT 06412
    Telephone: (860) 526-1100
    Facsimile: (860) 526-1120
    jmiller@sfmslaw.com
    pklingman@sfmslaw.com
    kleser@sfmslaw.com

James C. Shah
Natalie Finkelman
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com
nfinkelman@sfmslaw.com


MAURIELLO LAW FIRM, APC
Thomas D. Mauriello
1181 Puerta Del Sol, Suite 120
San Clemente, CA 92673
Telephone: (949) 542-3555
Facsimile: (949) 606-9690
tomm@maurlaw.com


*Attorneys for Plaintiffs and the Proposed
Classes*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that a copy of the foregoing Plaintiffs'

Amended Class Action Complaint was served on the following via the Court's CM/ECF system

on this 31st day of January 2011:

Steven J. Yatvin
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG, LLP
200 W. Madison Street
Suite 3900
Chicago, IL 60606
Tel: 312-984-3100

Mark Varney
Troy M. Yoshino
Aengus H. Carr
CARROLL, BURDICK & MCDONOUGH, LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Tel: 415-989-5900

***Attorneys for Defendant, Volkswagen Group of America, Inc.***

s/Ryan Furniss
_____
Ryan Furniss
HOLLAND, GROVES, SCHNELLER
& STOLZE, LLC
